**IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF OHIO
WESTERN DIVISION AT DAYTON**

| | | |
|---|---|---|
| ELIZABETH PARKER, | : | Case No. 3:11-cv-70 |
| Plaintiff, | : | District Judge Thomas M. Rose |
| | | Magistrate Judge Michael J.  Newman |
| vs. | : | |
| MICHAEL J. ASTRUE, | : | |
| COMMISSIONER OF | | |
| SOCIAL SECURITY, | : | |
| Defendant. | : | |

**REPORT AND RECOMMENDATION[1] THAT: (1) THE ALJ'S NON-DISABILITY
FINDING BE FOUND UNSUPPORTED BY SUBSTANTIAL EVIDENCE, AND
REVERSED; (2) THIS MATTER BE REMANDED TO THE COMMISSIONER UNDER
THE FOURTH SENTENCE OF 42 U.S.C. § 405(g) FOR PROCEEDINGS CONSISTENT
WITH THIS OPINION; AND (3) THE CASE BE CLOSED**

This is a Social Security appeal brought pursuant to 42 U.S.C. § 405(g) and §1383(c).  At

issue is whether the Administrative Law Judge ("ALJ") erred in finding that Plaintiff Elizabeth

Parker ("Plaintiff") was not "disabled" and therefore unentitled to Disability Insurance Benefits

("DIB") and/or Supplemental Security Income ("SSI").

This case is before the Court upon Plaintiff's Statement of Errors (doc. 6), Defendant's

memorandum in opposition (doc. 9), Plaintiff's reply (doc. 11), the administrative record, and the

record as a whole.

---

[1] Attached hereto is NOTICE to the parties regarding objections to this Report and Recommendation.

# I.  BACKGROUND

## A.  Procedural History

Plaintiff filed her applications for DIB and SSI on October 31, 2005, asserting that she has been under a "disability" since October 18, 2005.  *See* Administrative Transcript ("Tr.") 71-75. Plaintiff claims she is disabled due to herniated discs in her lower back, fibromyalgia, arthritis, plantar fasciitis, pain, anxiety, and depression.  Tr. 80.

Following initial administrative denials of her application, Plaintiff received two hearings before ALJ Thomas McNichols, II -- on October 23, 2008 and April 16, 2009. Tr. 785-823, 824-62. On May 7, 2009, ALJ McNichols issued a written decision, concluding that Plaintiff could perform a limited range of sedentary work and was not "disabled."  Tr. 17-31.

Specifically, the ALJ's "Findings," which represent the rationale of his decision, were as follows:

1.  The claimant meets the insured status requirements of the Social Security Act through December 31, 2010.

2.  The claimant has not engaged in substantial gainful activity since October 18, 2005, the alleged disability onset date (20 CFR 404.1571 et seq., and 416.971 et seq.).

3.  The claimant has the following severe impairments: 1) chronic low back pain attributed to multi-level degenerative disc disease; 2) a history of fibromyalgia; 3) rotator cuff tendonitis bilaterally; 4) depression (with anxiety); and 5) obesity (20 CFR 404.1520(c) and 416.920(c)).

4.  The claimant does not have an impairment or combination of impairments that meets or medically equals one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1 (20 CFR 404.1525, 404.1526, 416.925 and 416.926).

5.  After careful consideration of the entire record, the undersigned finds that the claimant has the residual functional capacity (RFC) to perform sedentary work as defined in 20 CFR 404.1567(a) and 416.967(a): subject to: 1)

2

standing and/or walking no more than four hours of an eight-hour work day; 2) no more than occasional work above shoulder level; 3) no use of foot controls; 4) no balancing, repetitive bending, stooping, kneeling, crouching, crawling, or repetitive twisting at the waist; 5) occasional pushing or pulling; 6) frequent fingering (fine manipulation); 7) no exposure to hazards; 8) no climbing of ropes, ladders, or scaffolds; 9) no exposure to vibrations; and 10) no requirement to maintain concentration on a single task for longer than 15 minutes at a time. By definition, sedentary work ordinarily requires mostly sitting and the lifting of small amounts of weight up to 10 pounds.

6.      The claimant is unable to perform any past relevant work (20 CFR 404.1565 and 416.965).

7.      The claimant was born on August 14, 1970, and was 35 years old and defined as a "younger individual" on the alleged disability onset date. (20 CFR 404.1563 and 416.963).

8.      The claimant has at least a high school education and is able to communicate in English, but there is no evidence that her education provides for direct entry into skilled work (20 CFR 404.1564 and 416.964).

9.      Transferability of job skills is not an issue in this case because the claimant's past relevant work is unskilled (20 CFR 404.1568 and 416.968).

10.     Considering her age, education, work experience, and residual functional capacity, there are jobs that exist in significant numbers in the national economy that the claimant can perform (20 CFR 404.1569, 404.1569a, 416.969, and 416.969a).

11.     The claimant has not been under a disability, as defined in the Social Security Act, from October 18, 2005, through the date of this decision (20 CFR 404.1520(g) and 416.920(g)).

Tr. 21-30.

Thereafter, the Appeals Council denied Plaintiff's request for review, making the ALJ's non-disability finding the final administrative decision of the Commissioner. Tr. 6-8. *See Casey v. Sec'y of Health & Human Servs.*, 987 F.2d 1230, 1233 (6th Cir. 1993). Plaintiff then filed this appeal on March 11, 2011. Doc. 2.

3

### B.     Administrative Hearings

At the October 23, 2008 administrative hearing, Plaintiff testified that, due to herniated discs, she has constant lower back pain that radiates into her legs. Tr. 792, 803-04. For treatment, she has undergone physical therapy and also taken injections. Tr. 793-94. She has also seen two neurosurgeons, but neither recommended surgery at that time. Tr. 792-93. She rated her back pain as a six or seven out of ten. Tr. 804.

In addition, Plaintiff testified that she has carpal tunnel syndrome in her right wrist that causes pain in her shoulders. Tr. 795-96, 805-06. She treats her carpel tunnel syndrome with physical therapy. Tr. 795-96. She testified that the carpel tunnel syndrome makes it difficult to use her right hand and hold objects. Tr. 795. Plaintiff rated the pain resulting from the carpel tunnel syndrome as a four or five out of ten. Tr. 806. Further, Plaintiff reported that she has arthritis in her left wrist. Tr. 796-97.

Plaintiff testified that her family doctor, Dr. Dean, diagnosed her with fibromyalgia. Tr. 797-98. Plaintiff treats her fibromyalgia with "relaexercise" and breathing exercises. Tr. 798, 807. On a scale of one to ten, Plaintiff rated her fibromyalgia pain as a seven. Tr. 807.

Plaintiff also testified that she is depressed. Tr. 800. She stated that she cried several times per week. *Id.* For the past four or five years, she has undergone counseling, approximately three or four times a month, and she sees a psychiatrist at least once a month. Tr. 800-02. Plaintiff takes several anti-depressant medications, and reported no side effects. *Id.*

The ALJ decided that an orthopedic examination of Plaintiff was necessary before resuming with the hearing. Tr. 821-22. Therefore, Dr. Vitols examined Plaintiff at the ALJ's request on January 12, 2009. Tr. 722-35. A second administrative hearing was held before the ALJ on April

16, 2009.  Tr. 824-61.  At that time, Plaintiff updated the ALJ regarding her conditions and symptoms.  She testified that recent testing showed nerve damage in her low back.  Tr. 829.  She further reported that she has continue to receive epidural injections.  Tr. 829-30.

In addition, Plaintiff reported that, as a result of her fibromyalgia and carpel tunnel syndrome,  she was no longer able to use her left hand at all, experienced pain in her shoulders and her neck, and could not raise her arms above shoulder level.  Tr. 832-34. She testified that receives injections once or twice per month and is taking Percocet for pain.  Tr. 836.  In addition, she reported that, since the previous hearing, she was prescribed higher dosages of Wellbutrin and Topamax to treat her depression and migraines.  Tr. 843.

Further, Plaintiff estimated that, as a result of pain and numbness in both legs and right leg dragging, she can walk no farther than five feet now.  Tr. 839-40.  Plaintiff testified that she can stand for five minutes, and sit in a chair for only two to three minutes without interruption. *Id.*  She estimated that she can lift a gallon of milk, but nothing heavier.  Tr. 841.

Malcolm Brahms, M.D., an orthopedic surgeon, testified as the medical expert ("ME") at the second hearing.  Tr. 844-50.  Dr. Brahms testified that he agreed with the functional limitations established by Dr. Vitols.  *See* tr. 846-49.

William Braunig, a vocational expert ("VE"), also testified at the second hearing.  Tr. 850-58.  The ALJ proposed a series of hypotheticals regarding Plaintiff's RFC to the VE.  *See id.*  Based on Plaintiff's RFC, age, education, and work experience, the VE testified that there were 3,500 jobs in the Dayton regional economy which Plaintiff could perform.  Tr. 855.

## II.   APPLICABLE LAW

### A.    Substantial Evidence Standard

The Court's inquiry on a Social Security appeal is to determine (1) whether the ALJ's non-disability finding is supported by substantial evidence, and (2) whether the ALJ employed the correct legal criteria. 42 U.S.C. § 405(g); *Bowen* v. *Comm'r of Soc. Sec.,* 478 F.3d 742,745-46 (6th Cir. 2007). In performing this review, the Court must consider the record as a whole. *Hephner v. Mathews*, 574 F.2d 359, 362 (6th Cir. 1978).

Substantial evidence is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson v. Perales,* 402 U.S. 389, 401 (1971).  When substantial evidence supports the ALJ's denial of benefits, that finding must be affirmed, even if substantial evidence also exists in the record upon which the ALJ could have found plaintiff disabled. *Id.*

The second judicial inquiry -- reviewing the correctness of the ALJ's legal analysis -- may result in reversal even if the ALJ's decision is supported by substantial evidence in the record. *Rabbers v. Comm'r of Soc. Sec.*, 582 F.3d 647, 651 (6th Cir. 2009). Thus, "a decision of the Commissioner will not be upheld where the SSA fails to follow its own regulations and where that error prejudices a claimant on the merits or deprives the claimant of a substantial right." *Bowen*, 478 F.3d at 746.

### B.    "Disability" Defined

To qualify for disability benefits, a claimant must suffer from a medically determinable physical or mental impairment that can be expected to result in death or that has lasted or can be expected to last for a continuous period of not less than 12 months.  42 U.S.C. §§ 423(d)(1)(A)

6

(DIB), 1382c(a)(3)(A) (SSI). The impairment must render the claimant unable to engage in the work previously performed or in any other substantial gainful employment that exists in the national economy. 42 U.S.C. §§ 423(d)(2), 1382c(a)(3)(B).

Administrative regulations require a five-step sequential evaluation for disability determinations. 20 C.F.R. § 404.1520. Although a dispositive finding at any step ends the ALJ's review, *Colvin v. Barnhart*, 475 F.3d 727, 730 (6th Cir. 2007), the complete sequential review poses five questions:

1.  Has the claimant engaged in substantial gainful activity?

2.  Does the claimant suffer from one or more severe impairments?

3.  Do the claimant's severe impairments, alone or in combination, meet or equal the criteria of an impairment set forth in the Commissioner's Listing of Impairments (the Listings), 20 C.F.R. Subpart P, Appendix 1?

4.  Considering the claimant's residual functional capacity ("RFC"), can he or she perform his or her past relevant work?

5.  Considering the claimant's age, education, past work experience, and RFC, can he or she perform other work available in the national economy?

20 C.F.R. § 404.1520(a)(4).

### III. ANALYSIS

As a preliminary note, Plaintiff's pertinent medical records have been adequately summarized in the parties' briefs, *see* doc. 6, at PAGEID 38-46; doc. 9, at PAGEID 62-68, and the Court will not repeat them here. Where applicable, the Court will identify the medical evidence relevant to its decision.

In her Statement of Errors, Plaintiff argues that the ALJ's RFC determination is not supported by substantial evidence. *See* doc. 6 at PAGEID 48-53. Specifically, she asserts that the

7

ALJ improperly ignored a crucial functional limitation that was recommended by both the state consulting physician, Dr. Vitols, and the testifying medical expert, Dr. Brahms. *See id.* In addition, Plaintiff argues that the ALJ afforded insufficient weight to the disability findings of her treating sources. *See id.*

### A. The State Consulting Physicians

At the outset, the Court notes that this case is strikingly similar to one recently before this Court: *Burgess v. Astrue*, No. 3:09-cv-461, 2011 U.S. Dist. LEXIS 26105, 163 Soc. Sec. Rep. 216 (S.D. Ohio Mar. 1, 2011).[2] The Court finds that ALJ McNichols committed the same error here that he did in *Burgess*: he selectively disregarded the functional limitation recommended by the state consulting physician, without providing a good reason for doing so, in order to avoid a finding of "disability."

### 1. Dr. Vitols

Aivars Vitols, D.O., an orthopedic surgeon, examined Plaintiff on January 12, 2009 at the ALJ's request. *See* tr. 722-35, 821. Dr. Vitols conducted various clinical tests on Plaintiff and noted the following results: "a slight antalgic gait" and favoring of the left lower extremity; "limited painful motion within the cervical spine"; "active, painful, restricted motion in both shoulders as

---

[2]A copy of this decision is attached to this Report and Recommendation as Appendix A . In *Burgess,* as here, the Court was reviewing a decision by ALJ McNichols denying the claimant benefits. *Burgess*, 2011 U.S. Dist. LEXIS 26105, at *2. Further, as in the current case, ALJ McNichols determined that an orthopedic examination was necessary. *See id.* at *7. Therefore, Dr. Vitols, an orthopedic surgeon, examined Plaintiff and submitted a form titled "Medical Source Statement of Ability to Do Work-Related Activities (Physical)." *Id* at *8-9. In that form, Dr. Vitols marked that Plaintiff could occasionally lift twenty pounds and occasionally carry ten pounds, but could not frequently lift or carry any amount of weight. *Id.* at *9-10. In determining Plaintiff's RFC, ALJ McNichols accepted all of Dr. Vitols' limitations except for the "no frequent lifting/carrying" restriction. *Id.* at *10. Instead, ALJ McNichols simply noted that Plaintiff could lift up to ten pounds. *Id.* In *Burgess*, as in this case, that distinction is critical because the vocational expert testified that no jobs would be available if a "no frequent lifting" restriction was added to the claimant's RFC. *Id.* at *10-11. Therefore, this Court reversed ALJ McNichols' decision. *Id.* at *16.

documented on the motion sheet"; "Hawkins signs are positive right and left"; and "active, restricted, painful motion within the back as documented on the motion sheet."  Tr. 724.

In addition, Dr. Vitols reviewed multiple medical imaging tests of Plaintiff's back.  Tr. 722-23.  A MRI of the lumbar spine dated March 24, 2005 revealed multiple level degenerative disc disease with a disc herniation at L4-5.  Tr. 723.  Another MRI, dated May 1, 2007, further documented multiple level degenerative disc disease at L3-4, 4-5 and L5-SI.  *Id.*  An August 27, 2007 CT scan showed asymmetric bulging at L4-5, and a disc bulge at L5-S1 with an associated annular tear at L3-4.  *Id.*

Dr. Vitols' impression following the examination was: exogenous obesity; depression; multiple-level degenerative disc disease lumbar spine; chronic cervical sprain/strain; migraine cephalgia; "rotator cuff tendinitis right and left with adhesive capsulitis right and left." Tr. 725.  His ultimate assessment was: "Plaintiff would have difficulty performing manual tasks that require standing, bending or twisting at the waist on a regular basis; and would not be able to do manual tasks that require lifting or carrying materials." *Id.*  He opined that claimant's functional capabilities were in the "low sedentary range." *Id.*

Based on these findings, Dr. Vitols also completed a Social Security Administration form, "Medical Source Statement of Ability to Do Work-Related Activities (Physical)." Tr. 730-35.  Dr. Vitols marked that Plaintiff could "occasionally" lift up to twenty pounds and "occasionally" carry up to ten pounds.  Tr. 730.  Dr. Vitols did not mark that Plaintiff could "frequently" lift or carry any amount of weight.  *Id.*  Moreover, Dr. Vitols noted that Plaintiff was restricted to:  sitting and walking no longer than thirty minutes without interruption; standing no longer than one hour without interruption; and, in an eight-hour day, sitting no longer than four hours total, and standing or

9

walking no longer than two hours total.  Tr. 731.  Dr. Vitols further marked that Plaintiff could: "occasionally" reach, handle, finger, feel, or push/pull with both hands; never operate foot controls with either foot; never climb, balance, stoop, kneel, crouch, or crawl; and never be exposed to unprotected heights, moving machinery, or operate a motor vehicle.  Tr. 732-34.  Finally, Dr. Vitols opined that these limitations would last for twelve consecutive months.  Tr. 735.

### 2.    Dr. Brahms

Additionally, Malcolm Brahms, M.D., an orthopedic surgeon who testified as the ME at the second administrative hearing, adopted Dr. Vitols' recommended functional limitations. Dr. Brahms testified that he reviewed Plaintiff's medical records and wholly agreed that Plaintiff had the work restrictions that Dr. Vitols reported in the January 12, 2009 Medical Source Statement.  Tr. 845-49.

### 3.    The ALJ Committed Reversible Error in Ignoring Dr. Vitols' "No Frequent Lifting" Restriction

In determining Plaintiff's RFC -- a reduced range of sedentary work -- the ALJ deferred to the opinions of Dr. Brahms and Dr. Vitols, explaining that "[a] great deal of weight is due to [their opinions] based on their expertise in orthopedics and based on their analyses of detailed diagnostic and clinical data."  Tr. 26.  (brackets added).[3]  Nonetheless, the ALJ deviated from Dr. Vitols' assessment of Plaintiff's physical limitations in two respects.

First, the ALJ did not accept Dr. Vitols' determination -- that Plaintiff can only "occasionally" use her hands for reaching, handling, fingering, feeling and pushing/pulling -- because he found that such a restriction was not warranted based on the medical evidence, and instead imposed a "frequent hand manipulation" restriction.  *Id.*  This deviation is not determinative

---

[3]As discussed below, the ALJ completely disregarded the opinions of Plaintiff's treating sources.

in this case, however, because the VE testified that 3,500 sedentary jobs would remain regardless of whether Plaintiff was restricted to "occasional" or "frequent" hand manipulation.  Tr. 855.

In contrast, the ALJ's second deviation was critical.  The ALJ ignored Dr. Vitols' determination that Plaintiff could lift up to ten pounds, but only "occasionally."  In other words, Dr. Vitols opined that Plaintiff could not lift "frequently."  This seemingly minor difference is of crucial importance in this case.  The VE testified that Plaintiff could perform 3,500 sedentary jobs.  Tr. 852-55.  However, when asked by Plaintiff's attorney whether adding a restriction of "no frequent lifting" would affect the number of jobs, the VE stated that there would be no jobs that Plaintiff could perform with such a restriction.  Tr. 857-58.

The ALJ did not explain why he disregarded the "no frequent lifting" restriction while accepting all the other limitations proposed by Dr. Vitols and adopted by Dr. Brahms.  Indeed, the ALJ continued the hearing to have Dr. Vitols examine Plaintiff and explicitly granted Dr. Vitols' opinion more weight than those of other physicians due to his orthopedic speciality.  Tr. 26.  Further, the ALJ explained why he changed the "occasional hand manipulation" restriction in Dr. Vitols' opinion to "frequent hand manipulation," yet he failed to articulate his reasons for rejecting the "no frequent lifting" aspect of Dr. Vitols' opinion.

Thus, without providing a good reason for doing so, the ALJ selectively excluded the portion of Dr. Vitols' assessment which, in light of the VE's testimony, would have mandated a finding of "disability."  This constitutes reversible error.  *Cf. Hall v. Comm'r of Soc. Sec.*, 148 F. App'x 456, 465-66 (6th Cir. 2004) (finding that the ALJ committed reversible error in dismissing portions of a medical report, while adopting the remainder of the report, without good reasons, and ultimately determining a RFC that was not supported by any of the medical source opinions); *Howard v.*

11

*Comm'r of Soc. Sec.*, 276 F.3d 235, 240-41 (6th Cir. 2002) (finding that the ALJ committed reversible error by "selectively" including only the portions of a medical source's report which suggest the claimant was capable of working).

Therefore, the Court finds that the ALJ's decision should be reversed, and remanded to the Commissioner for a rehearing on this issue.

**B.      Plaintiff's Treating Sources**

In addition, Plaintiff argues that, in determining her RFC, the ALJ afforded insufficient weight to her treating sources' opinions. *See* doc. 6 at PAGEID 48-53.  The Court will first address whether the ALJ properly evaluated the opinion of Plaintiff's primary care physician, Dr. Dean, and will then address the ALJ's evaluation of Plaintiff's mental health treaters, Dr. Gollamudi and Ms. Visland.

**1.      Treating Physician Rule**

The treating physician rule "requires the ALJ to generally give greater deference to the opinions of treating physicians than to the opinions of non-treating physicians because:

> 'these sources are likely to be the medical professionals most able to provide a detailed, longitudinal picture of [the claimant's] medical impairment(s) and may bring a unique perspective to the medical evidence that cannot be obtained from the objective medical findings alone of from reports of individual examinations, such as consultative examinations or brief hospitalizations.'"

*Blakley v. Comm'r of Soc. Sec.*, 581 F.3d 399, 406 (6th Cir. 2009) (quoting 20 C.F.R.

§ 404.1527(d)(2)).  Thus, an ALJ must give controlling weight to a treating source if he or she finds the opinion well-supported by medically acceptable data and not inconsistent with other substantial

12

evidence in the record. *Wilson v. Comm'r of Soc. Sec.,* 378 F.3d 541, 544 (6th Cir. 2004) (citing 20 C.F.R. § 404.1527(d)(2)).[4]

Closely associated with the treating physician rule is the "good reasons rule," which "require[s] the ALJ to 'always give good reasons in [the] notice of determination or decision for the weight' given to the claimant's treating source's opinion." *Blakley,* 581 F.3d at 406 (citing 20 C.F.R. § 404.1527(d)(2)). "Those good reasons must be 'supported by the evidence in the case record, and must be sufficiently specific to make clear to any subsequent reviewers the weight the adjudicator gave to the treating source's medical opinion and the reasons for that weight.'" *Id.* at 406-07 (citing SSR 96-2p, 1996 SSR LEXIS 9, at *12).

## 2. The ALJ Erred in Failing to Defer to Dr. Dean's Opinion

Jacob Dean, M.D. has been Plaintiff's primary care physician since September 8, 2004.[5] *See* tr. 418-70, 608-11, 766-73. During that time, the record shows that Dr. Dean treated Plaintiff on more than twenty-five occasions for various conditions including fibromyalgia, herniated disc syndrome, back pain, back spasms, ankle and foot pain, arthritis, panic attacks, migraines and anxiety. *See id.*

---

[4]If the ALJ decides that the treating physician's opinion is unentitled to *controlling* weight, the ALJ must apply the factors listed in 20 C.F.R. § 404.1527(d)(2) (length of treatment relationship and the frequency of the examination; the nature and extent of the treatment relationship; supportability of the opinion; consistency of the opinion with the record as a whole; and the specialization of the treating source) in determining what weight to give the opinion. *Hensley v. Astrue*, 573 F.3d 263, 266-67 (6th Cir. 2009). In weighing these factors, there is a presumption that the treating physician's opinion is entitled to "great deference." *See id.* *See also* SSR 96-2p, 1996 SSR LEXIS 9, at *9-10 ("In many cases, a treating source's medical opinion will be entitled to the greatest weight and should be adopted, even if it does not meet the test for controlling weight.").

[5]The last medical record from Dr. Dean was on March 20, 2009. Tr. 766-67.

13

As Plaintiff's treater, Dr. Dean continually reported that Plaintiff's physical limitations precluded her from working.  *See* tr. 413-17, 422-23, 432-33, 453-54.  Most recently, on April 24, 2008, Dr. Dean completed interrogatories, wherein he opined that Plaintiff had the following work restrictions:  lift/carry no more than five pounds; stand/walk no longer than twenty minutes total in an eight-hour workday; sit no longer than four hours total in an eight-hour workday, and sit no longer than twenty minutes uninterrupted; never climb, crouch, kneel, or crawl, and balance or stoop only "occasionally."  Tr. 414-15.  Dr. Dean further noted that Plaintiff's ability to reach, handle, finger, feel, and push/pull were affected by her impairments, and recommended that she not be exposed to certain environments, such as heights, moving machinery, and chemicals. Tr. 415-16. Finally, Dr. Dean opined that Plaintiff's concentration and memory were affected by her impairments.  Tr. 416.  Ultimately, he concluded that Plaintiff did not have the RFC to perform even sedentary work on a sustained basis.  Tr. 417.

In making his RFC determination, the ALJ gave "little weight" to Dr. Dean's disability finding.  Tr. 28.  The ALJ stated that Dr. Dean's multiple opinions were "poorly supported by the medical findings and are contrary to the weight of the evidence."  Tr. 27.  Such a finding is not supported by substantial evidence.

Even assuming, *arguendo*, that Dr. Dean's opinion was unentitled to controlling weight, the ALJ erred because he failed to apply the relevant factors.  "[A] finding that a treating source medical opinion . . . is inconsistent with the other substantial evidence in the case record means only that the opinion is not entitled to 'controlling weight,' not that the opinion should be rejected."  *Blakley*, 581 F.3d at 408 (quoting SSR 96-2p).  It is well-established that in such a case, the ALJ must apply certain factors: "(1) the length of the treatment relationship and the frequency of examination,

14

(2) the nature and extent of the treatment relationship, (3) the supportability of the opinion, (4) the consistency of the opinion with the record as a whole, and (5) the specialization of the treating source." *Bowen*, 478 F.3d at 747 (citing 20 C.F.R. § 404.1527(d)(2)). In weighing these factors, there remains a presumption that a treating source's opinion is entitled to "great deference." *Hensley*, 573 F.3d at 266 (citation omitted).

Here, the ALJ merely listed these factors in a boilerplate fashion, and in no way indicated the weight he gave to the relevant factors. *See* tr. 27-28. Specifically, the ALJ failed to acknowledge that, at the time of the hearing, Dr. Dean had been Plaintiff's primary care physician for over four years, and treated Plaintiff on more than twenty-five occasions. Further, the ALJ did not consider how Dr. Dean's opinion is supported by clinical findings. His treatment notes repeatedly state that Plaintiff had pain on palpation, decreased range of motion of the lumbar spine, multiple positive trigger points, lumbar muscle tenderness, and positive straight leg raises. Tr. 419, 421, 425, 427, 429, 431, 435, 437, 439, 441, 443, 445, 447, 451, 609, 611, 767, 769, 771, 773. Similarly, Dr. Dean repeatedly noted that Plaintiff was experiencing numbness, tingling sensations, and recurrent weakness in both legs. *See, e.g.,* tr. 418, 420, 424, 426, 428, 430.

Further, Dr. Dean's opinion is supported by objective medical evidence in the record. For example, a September 2007 electrodiagnostic exam (nerve conduction study) revealed significantly diminished function. Tr. 473. A lumbar CT scan in August 2007 showed a "Grade IV annular tear within asymmetric bulging of the L4-5 disc" and "moderate left foraminal stenosis"; a "Grade III annular tear within a bulging disc at L5-SI"; and a "[s]mall Grade III annular tear at L3-4." Tr. 472.

Thus, a proper application of these relevant factors demonstrates that Dr. Dean's medical opinion was entitled to substantial weight. The ALJ's failure to follow agency rules and regulations

15

"denotes a lack of substantial evidence, even where the conclusion of the ALJ may be justified based upon the record." *Blakley*, 581 F.3d at 407. Accordingly, the Court finds the ALJ's decision -- to not defer to Dr. Dean's opinion without conducting a proper analysis -- to be unsupported by substantial evidence. Therefore, the ALJ's decision should be reversed, and the matter remanded to the Commissioner for a rehearing on this issue.

### 3.   Substantial Evidence Supports the ALJ's Decision to Not Defer to Plaintiff's Mental Health Treaters

In contrast, the Court finds that the ALJ's decision -- to not give controlling or substantial weight to Plaintiff's mental health treating sources -- is supported by substantial evidence. Plaintiff was treated for her mental impairments by various psychiatrists and therapists at Advanced Therapeutic Services from June 2006 through March 2009. *See* tr. 358-411, 701-19, 756-65, 774-80.

In April 2008, two of Plaintiff's treaters at Advanced Therapeutic Services -- psychiatrist R. Gollamudi, M.D. and treating therapist Audrey Visland, M.S.S.W. -- completed interrogatories and a Psychiatric Review Technique Form. Tr. 591-99; 600-07. They reported that Plaintiff has major depressive disorder and anxiety, and her symptoms include depression, anxiety, anger, mood swings, tearfulness, paranoia, panic attacks, insomnia, and weight loss. Tr. 592. With little to no explanation, they checked "no" in response to thirteen questions asking whether Plaintiff had the capability to perform specific work-related activities on a regular, sustained basis, *i.e.,* being prompt and regular in attendance; responding appropriately to supervisors and co-workers; and working without special supervision. Tr. 594-98. They further opined that Plaintiff had extreme difficulties in maintaining social functioning and marked-to-extreme deficiencies in concentration, persistence, and pace. Tr. 598-99, 607. However, they reported that she had no restrictions in performing daily living activities. Tr. 598.

16

Based on a review of Plaintiff's mental health treatment records, the ALJ determined that Plaintiff had "depression associated with some anxiety" that "would significantly affect her ability to maintain concentration on a single task for an extended period." Tr. 23. Accordingly, in determining Plaintiff's RFC, the ALJ added the following work restriction: "[n]o requirement to maintain concentration on a single task for longer than 15 minutes at a time." Tr. 25, 27.

In doing so, the ALJ did not accord controlling weight, or substantially defer, to the disability findings of Dr. Gollamudi and Ms. Visland. The ALJ discredited their opinions on the grounds that their assessments were "poorly-supported by any clinical findings or the treatment records." Tr. 28. Specifically, the ALJ stated that their "progress notes generally do not contain detailed mental status findings that would suggest that the claimant is emotionally labile." *Id.* The ALJ found that "Plaintiff's progress in therapy has been uneven, but she often is improved in therapy; she has not had significant medication side effects or required hospitalization; and she seems to have been able to stay fairly active in activities of daily living." *Id.*

The Court finds the ALJ's reasons for discrediting their opinions to be supported by substantial evidence. As a preliminary matter, Dr. Gollamudi and Ms. Visand were not consistently Plaintiff's treaters.[6] In addition, their disability opinion was conclusory and not supported by detailed, clinical, diagnostic evidence. *Cf. Walters v. Comm'r of Soc. Sec.*, 127 F.3d 525, 530 (6th Cir. 1997). For example, they report that Plaintiff has extreme difficulty in social functioning. Yet, in their treatment notes, there are few, if any, indications that Plaintiff reported having such a problem. *See* 358-93, 701-07, 774-80. Moreover, as the ALJ correctly noted, Dr. Gollamudi's notes

---

[6]It appears that Ms. Visland treated Plaintiff from May 2007 until March 2008. *See* tr. 360-93. Plaintiff was treated by a different therapist from April 2008 through March 2009. *See* tr. 708-19, 756-65. In addition, Plaintiff was treated by a different psychiatrist from May 2007 through March 2008, *see* tr. 360-411, and by Dr. Gollamudi from April 2008 through March 2009. *See* tr. 701-07, 774-80.

from 2008 and 2009 indicate that Plaintiff's symptoms were improving; she was having no side effects from her medication; she was sleeping regularly; and she was not experiencing irritability or anxiety. *See* tr. 704-05, 707, 774-78. Finally, substantial evidence supports the ALJ's finding that Plaintiff's reported daily activities were inconsistent with the disability finding of Dr. Gollamudi and Ms. Visland. *See, e.g.,* tr. 184-236, 379, 392.

Therefore, the Court finds that substantial evidence supports the ALJ's decision to disregard the disability finding of Dr. Gollamudi and Ms. Visland.

## IV. RECOMMENDATION

For the foregoing reasons, Plaintiff's assignment of error is well taken. The Court finds that, as more fully explained above, the ALJ's decision is unsupported by substantial evidence, and recommends that it be reversed. Further, because factual issues remain in this case, *see supra*, the Court recommends that this matter be remanded to the Commissioner of Social Security under the fourth sentence of 42 U.S.C. § 405(g). *See Faucher v. Sec'y of Health & Human Servs.*, 17 F.3d 171, 173-76 (6th Cir.1994). On remand, the ALJ should (1) determine anew Plaintiff's RFC; (2) evaluate, in light of Plaintiff's RFC, whether there were a significant number of jobs which she could perform prior to the expiration of her insured status; and (3) analyze whether or not Plaintiff was "disabled" during the time here in question.

18

**IT IS THEREFORE RECOMMENDED THAT:**

1.      The Commissioner's non-disability finding be found **UNSUPPORTED BY SUBSTANTIAL EVIDENCE**, and **REVERSED**;

2.      This matter be **REMANDED** to the Commissioner under the fourth sentence of 42 U.S.C. § 405(g) for proceedings consistent with this opinion; and

3.      This case be **CLOSED**.


February 10, 2012                                       **s/Michael J.  Newman**
                                                        United States Magistrate Judge

## NOTICE REGARDING OBJECTIONS

Pursuant to Fed. R. Civ. P. 72(b), any party may serve and file specific, written objections to the proposed findings and recommendations within **FOURTEEN** days after being served with this Report and Recommendations. Pursuant to Fed. R. Civ. P. 6(e), this period is extended to **SEVENTEEN** days because this Report is being served by one of the methods of service listed in Fed. R. Civ. P. 5(b)(2)(B)(C), or (D) and may be extended further by the Court on timely motion for an extension. Such objections shall specify the portions of the Report objected to and shall be accompanied by a memorandum of law in support of the objections. If the Report and Recommendations are based in whole or in part upon matters occurring of record at an oral hearing, the objecting party shall promptly arrange for the transcription of the record, or such portions of it as all parties may agree upon or the Magistrate Judge deems sufficient, unless the assigned District Judge otherwise directs. A party may respond to another party's objections within **FOURTEEN** days after being served with a copy thereof. Failure to make objections in accordance with this procedure may forfeit rights on appeal. *See United States v. Walters*, 638 F. 2d 947 (6th Cir. 1981); *Thomas v. Arn,* 474 U.S. 140 (1985).